**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| James Larry Smith, | ) | No. CV 99-00168-PHX-NVW (JRI) |
| Petitioner, | ) | **ORDER** |
| v. | ) | |
| Dora Schriro, | ) | |
| Respondents. | ) | |

Pending before the court is the Report and Recommendation ("R&R") of Magistrate Judge Irwin (Doc. # 73) regarding petitioner's Second Amended Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Doc. # 56). The Petition asserts three grounds for relief: (1) the Superior Court's failure to grant a new trial upon discovery that Detective Janis L. Whitson's testimony is generally unreliable violates due process (Ground A); (2) Petitioner's trial and appellate counsel rendered ineffective assistance in failing to inquire about the age of the victim's injury (Ground B); and (3) Petitioner's trial counsel rendered ineffective assistance by failing to investigate Grounds A and B, meet with and advise Petitioner, call Petitioner's son as a witness during trial, and call an expert witness (Ground C). The R&R recommends that the court dismiss Ground A with prejudice as untimely and procedurally defaulted. R&R at 55-56. The R&R further recommends that the court dismiss Ground B as procedurally defaulted insofar as it relates to Petitioner's appellate counsel. *Id.* As they relate to the effectiveness of Petitioner's trial counsel, the allegations in Grounds B

and C are recommended dismissed for lack of substantive merit. *Id.* The Magistrate Judge advised the parties that they had ten days to file objections to the R&R. *Id.* at 56 (citing 28 U.S.C. § 636(b). Petitioner makes the following objections with respect to Ground A:

    (1) Ground A in the Second Amended Petition should be deemed timely because it "relates back" to Petitioner's First Amended Petition, which was timely filed.

    (2) Ground A was fairly presented to the State court as a federal constitutional issue and therefore was not procedurally defaulted.

    (3) Even if Ground A was not fairly presented to the State court, newly discovered evidence that Detective Whitson fabricated testimony in prior cases warrants federal habeas review to prevent a fundamental miscarriage of justice.

    (4) Even if Ground A is barred by the statute of limitations or procedurally defaulted, Petitioner is still entitled to a review of Ground A on the merits.

With respect to Ground B, Petitioner objects as follows:

    (1) Ground B should not be denied with respect to Petitioner's trial counsel because a reasonably competent trial attorney would have ensured that the victim's injury was incurred on the date of the alleged incident involving Petitioner.

    (2) Ground B was not procedurally defaulted with respect to Petitioner's appellate counsel because Petitioner fairly presented the issue to the state courts as one of federal constitutional law.

Finally, Petitioner raises the following objection to the R&R's disposition of Ground C:

    (1) Ground C should not be denied because effective trial counsel would have met more extensively with Petitioner and called Petitioner's son as a witness.

The Court has considered Petitioner's objections and reviewed the Report and Recommendation de novo. *See* 28 U.S.C. § 636(b)(1) (stating that the Court must make a de novo determination of those portions of the Report and Recommendation to which specific objections are made); Fed. R. Civ. P. 72(b). The objections will be examined in the order raised.

**I.    Ground A**

    **A.    Objection 1**

Petitioner's first objection is that Ground A of the Second Amended Petition should be deemed timely because it "relates back" to his timely First Amended Petition. Federal Rule of Civil Procedure 15 allows amendments to pleadings to relate back to the date when the original pleading was filed if the "claim . . . asserted in the amended pleading arose out

- 2 -

of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2); *Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006). In the context of habeas corpus, Rule 15's "'relation back' provision is to be strictly construed, in light of Congress' decision to expedite collateral attacks" by means of "stringent time restrictions." *United States v. Ciampi*, 419 F.3d 20, 23 (1st Cir. 2005) (internal quotation marks omitted). Amended habeas corpus claims may not relate back if they depend upon events which are separate both in "time and type" from the events upon which the original claims depended. *Mayle v. Felix*, 545 U.S. 644, 650, 659 (2005); *Ciampi*, 419 F.3d at 24. Because the "central policy of Rule 15(c)" is to "ensur[e] that the non-moving party has sufficient notice of the facts and claims giving rise to [a] proposed amendment," *Anthony v. Cambra*, 236 F.3d 568, 576-78 (9th Cir. 2000), relation back is only proper if the "original and amended petitions state claims that are tied to a common core of operative facts," *Mayle*, 545 U.S. at 664. *See* 6A Wright & Miller § 1508, at 201-02 ("[If a party] is given sufficient notice of the nature of the claim being asserted at the outset of the action, the policy underlying the statute of limitations is in no way compromised by allowing a supplemental pleading to relate back."). An amended petition that "expand[s] upon or clarif[ies] facts previously alleged" may relate back under this standard. *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002); *Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001); *see also Laurore v. Spencer*, 396 F. Supp. 2d 59, 62-63 & n.1 (D. Mass 2005) (noting that *Hicks* remains good law after *Mayle*).

The facts in *Mayle* help illustrate the Rule. In that case, the petitioner filed a timely habeas petition that challenged the admissibility of videotaped witness testimony under the confrontation clause of the Sixth Amendment. After the expiration of the one-year statute of limitations at 28 U.S.C. § 2244(d), he then filed an amended petition alleging only that the introduction at trial of incriminating statements obtained through police interrogation violated his Fifth Amendment right against self-incrimination. The petitioner argued that the Fifth Amendment claim should be considered timely because it related back to the Sixth Amendment claim in the timely original petition. In support of this argument, he claimed

1  that the trial in which all of the allegedly inadmissible statements were introduced constituted
2  a single "transaction" or "occurrence" for the purposes of Rule 15(c). The Court, however,
3  found otherwise. Because the petitioner's original and amended claims "targeted separate
4  episodes" of interrogation of different individuals, 545 U.S. at 660, it was held that the claims
5  did not depend on a "common core of operative facts," *id.* at 659, and that the amended
6  petition was therefore untimely for failure to relate back. It was further explained that if
7  "claims asserted after the one-year period could be revived simply because they relate to the
8  same trial, conviction, or sentence as a timely filed claim, [28 U.S.C. § 2244(d)'s] limitation
9  period would have slim significance." *Id.* at 662.

10  Smith contends that Ground A relates back to four grounds for relief that were raised
11  in the timely First Amended Petition: Grounds One, Six, Seven, and Twelve. Ground One
12  alleged that Detective Whitson's trial testimony violated Petitioner's Fifth Amendment right
13  against self-incrimination because it concerned statements made by Petitioner during an
14  interrogation that persisted even after Petitioner unsuccessfully requested counsel. Doc. #
15  4. Ground Six alleged that "Detective Janis Whitson perjured herself before the Grand Jury"
16  by testifying of "criminal acts committed by Petitioner against [his son] David Smith against
17  her full knowledge that no such charges were made by David Smith." *Id.* Ground Seven
18  alleged that the "Petitioner's alleged admission of internal penetration was fabricated by
19  Detective Whitson at trial and prejudiced the jury." *Id.* Ground Twelve in turn alleged that
20  Detective Whitson is "guilty of unethical conduct" because she assisted in the attempt to
21  prosecute Petitioner under Counts IV, V, and VI of the Indictment despite knowledge of
22  relevant exonerating statements from David Smith. *Id.* In contrast to these claims, Ground
23  A of the Second Amended Petition contends that Petitioner was deprived of due process
24  during trial because he lacked an opportunity to challenge the credibility of Detective
25  Whitson's testimony against him in light of her demonstrably false testimony in other
26  unrelated cases. Doc. # 56 at 10.

27  Although it is a close question, the court declines to adopt the R&R insofar as it
28  recommends the dismissal of Ground A of the Second Amended Petition under 28 U.S.C. §

2244(d). *Mayle* holds that an amended habeas petition "does not relate back . . . when it asserts a new ground for relief supported by facts that differ in *both* time and type from those the original pleading set forth." 545 U.S. at 650 (emphasis added). The facts underlying Grounds Six, Seven, and Twelve of the First Amended Petition occurred in April 1995, both during and immediately preceding Petitioner's trial before the Superior Court. The facts underlying Ground A of the Second Amended Petition, on the other hand, occurred in various criminal trials not involving Petitioner between at least 1997 and 1999. *See* Doc. # 56, Exhibit B. It is therefore clear that the facts in support of Ground A differ in "time" from those alleged in support of the relevant grounds of the First Amended Petition. However, the facts do not also differ in "type." Grounds A, Six, Seven, and Twelve all concern Detective Whitson's false testimony and its effect on the validity of Petitioner's conviction. Although the first and second amended petitions allege separate instances of perjury by Whitson, the factual allegations in the latter petition are best seen as a corroborative elaboration of the allegations in the former. To the extent that Whitson's perjury in other cases was relevant, it was only because that misconduct bolstered the persuasiveness of Petitioner's timely allegations that Whitson perjured herself in this case. Rule 15(c) permits relation back in these circumstances. *Hicks*, 283 F.3d at 388.

The conclusion that Ground A relates back to the timely First Amended Petition is consistent with the aim of Rule 15(c). *See Cambra*, 236 F.3d at 576-78. The common factual basis and purpose underlying Ground A and the relevant claims in the First Amended Petition ensures that the Government has not received unfair surprise. Petitioner's September 14, 1999, notice to this court also gave the Government ample reason to anticipate the factual basis for Ground A. That submission explained that the fresh revelations of perjurious conduct by Whitson in other cases supported the allegations in Grounds One, Six, Seven, Eight through Fourteen, Sixteen, Twenty Seven, Twenty Nine, Thirty One, and Forty of the First Amended Petition. *Id.* The Petition for Review to the Arizona Court of Appeals similarly identified Whitson's prior perjuries as an arguable basis for new trial in this case. Exhibit BB at 2-3, 5-7.

Cases finding that a proposed amendment did not relate back have involved more disparate facts that those at issue. In *Hicks*, for example, a timely habeas petition alleged that the Government violated 18 U.S.C. § 201(c)(2) by promising leniency to its witnesses in exchange for their trial testimony. The amended petition filed outside the statutory period, in contrast, alleged only that the petitioner's sentence violated the Supreme Court's holding in *Apprendi v. New Jersey*, 540 U.S. 466 (2000), because it was based on findings of fact made in part by the trial court judge. The District of Columbia Circuit held that the amended claim did not relate back because it advanced "an entirely new legal theory that arises from an entirely different set of facts and type of conduct . . . than did the timely petition." 283 F.3d at 389. In *United States v. Hernandez*, 436 F.3d 851 (8th Cir. 2006), the timely petition asserted a claim of ineffective assistance of counsel for failure to object to the admission of evidence that lacked a proper foundation, while the amended petition alleged ineffective assistance of counsel for failure to cross-examine two witnesses effectively. It was held on these facts that relation back was unwarranted because the claims were not sufficiently similar to place the opposing party on notice that cross-examination of witnesses was at issue. *Id.* at 858. *See also United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999) (holding that an amended claim alleging ineffective assistance of counsel for failure to pursue a downward departure did not relate back to a timely claim for ineffective assistance concerning failure to file an appeal); *Woodward*, 263 F.3d at 1142 (holding that claims of ineffective assistance of counsel and juror misconduct did not relate back to a timely claim under the Confrontation Clause). Unlike the claims in these cases, Grounds A, Six, Seven, and Twelve are founded on the common theory that Petitioner's trial was defective because it failed to reveal Detective Whitson's utter lack of testimonial credibility. This common theory in turn relied on related factual predicates regarding the detective's perjury. Ground A is therefore timely under 28 U.S.C. § 2244(d).

**B.     Objection 2**

Petitioner's next objection is that, contrary to the finding of the Magistrate Judge, Ground A was "fairly presented" to the State courts as a federal due process claim in the

Petition for Review of Denial of Rule 32 Relief filed with the Arizona Court of Appeals on May 19, 2004, and was therefore not procedurally defaulted. In relevant part, the Petition for Review stated as follows:

> In early 1999, Petitioner discovered that the principal witness against him in his trial, Glendale Detective Janis L. Whitson, had been fired by the [Police] Department for consistently lying in her investigation of child sex cases. . . .  Indeed, the present County Attorney was so alarmed that he personally took it upon himself to inform the Glendale Police Department of his Office's reluctance to handle any further cases investigated by her. . . . Her propensity to falsify confessions and physical evidence was not known to Petitioner at the time of his trial.
>
> . . .
>
> REASONS WHY THE PETITION SHOULD BE GRANTED
>
> The evidence concerning lack of credibility on the part of investigating officer Janis L. Whitson was not discovered until after Petitioner's trial; given the County Attorney's role in procuring her dismissal for falsifying evidence, his Office was equitably and ethically estopped from contesting Petitioner's attempt to secure a new trial.
>
> The documents appended to Petitioner's Notice show that as of at least 1997, the County Attorney himself began discovering Detective Whitson's pattern of systematically falsifying statements, evidence, and testimony in the investigation of child sexual abuse cases, apparently out of some warped sense of duty. She inevitably and invariably assumed guilt on the part of any defendant, and if the evidence was somewhat deficient to prove so, she had no problems in shaping in [sic] to her own ends.
>
> Had this pattern of deception been discovered in time for Petitioner's trial, cross-examination would have been extraordinarily different, and effective. *See,* Rule 608, *Rules of Evidence*. Indeed, the County Attorney eventually took the position that Whitson's conduct in sexual abuse cases was of such constitutional significance that it was required to reveal it to defense attorneys. *See,* Exhibit C to Petitioner's Notice.
>
> If the County Attorney himself expressed grave doubts about the prosecution of any of Whitson's cases because of her total lack of credibility, then the requirements of Rule 32.1(e)(3) have been met: the information in Exhibit C "substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence."
>
> The Court should further consider the requirements of Rule 42, *Rules of the Supreme Court*, ER 3.8.  The "special

> responsibilities of a prosecutor" include seeking justice and not merely a conviction, or, in this instance, sustaining a flawed one.
>
> While the record concerning Whitson's conduct contains no cited cases prior to 1997, the description of the *Blair* case included with the department's investigation report (Exhibit C, Notice of Post-Conviction Relief (March 2003)) includes the finding that Whitson professed the belief that defendants should not be given the benefit of the doubt until proven guilty. This sentiment was affirmed in interviews with investigating officers from the Glendale Police Department. Throughout her testimony at trial, Whitson repeatedly confirmed that she had gone to the house to arrest Petitioner and had no intention of letting him out of her or her fellow officers' sight.
>
> This propensity to lie did not suddenly appear two years after Petitioner's trial. Rather, it was part and parcel of Whitson's *character*, admissible under Rule 608. The fact that it was not *discovered* until after the trial is precisely what Rule 32.1(e) provides for. The truthfulness and veracity of a witness is always material. *Fridena v. Evans*, 127 Ariz. 516, 622 P.2d 463, 12 A.L.R. 4th (1980):
>
>> Arizona's rules of evidence explicitly permit such an inquiry. *See* Ariz. R. Evid. 607, 17A A.R.S.; *State v. Ramos*, 108 Ariz. 36, 39, 492 P.2d 697, 700 (1972) ("'[A] party against whom a witness is produced has a right to show everything which may in *the slightest degree* affect [the witness's] credibility.'"), *quoting State v. Holden*, 88 Ariz. 43, 54, 352 P.2d 705, 713 (1960).
>
> (emphasis supplied) *State v. Livingston*, 206 Ariz. 145, 75 P.3d 1103, at 1106 (App. 2003).
>
> Put to use here, an officer who believes in 1997 that a suspect is not entitled to the benefit of the doubt until proven guilty is no less likely to have believed such in 1993.
>
> In short, but for the fortuitous timing of the County Attorney's discovery of Whitson's predilections, Petitioner very likely would not have been prosecuted. The minimum relief that should be granted Petitioner is a new trial.

Exhibit BB at 2-3, 5-7. Petitioner specifically objects to the R&R on the view that the citation to "*State v. Holden*, 88 Ariz. 43, 54, 352 P.2d 705, 713 (1960)" was sufficient to notify the Arizona Court of Appeals of his federal due process claim. *Id.* at 6.

Petitioner's objection is unpersuasive. Prior to obtaining federal habeas relief under 28 U.S.C. § 2254, a petitioner "must properly exhaust his state remedies by fairly presenting his federal claim in the state courts and thereby giving those courts an opportunity to act on

- 8 -

1 his claim." *Peterson v. Lampert*, 319 F.3d 1153, 1156-57 (9th Cir. 2003). "[G]eneral 2 appeals to broad constitutional principles, such as due process, equal protection, and the right 3 to a fair trial" do not constitute a "fair presentation" of a federal claim. *Castillo v.* 4 *McFadden*, 399 F.3d 993, 999 (9th Cir. 2004) (internal quotation marks omitted). Nor is it 5 sufficient to "raise a state claim that is analogous or closely similar to a federal claim," *id.*, 6 or raise a federal claim exclusively at the trial court level, *id.* at 1000, or cite "irrelevant 7 federal or state cases," *id.* at 1001, or engage in "scattershot citation of federal constitutional 8 provisions" without developing "any articulated federal legal theory," *id.* at 1002. To 9 properly exhaust, the petitioner "must have either referenced specific provisions of the 10 federal constitution or cited to federal or state cases involving the legal standard for a federal 11 constitutional violation." *Id.* at 999. "When a prisoner has deprived the state courts of a fair 12 opportunity to pass on his claim and state procedural rules bar him from returning to state 13 court, he has procedurally defaulted" and is generally ineligible for federal habeas relief. 14 *Peterson*, 319 F.3d at 1156.

15 The relevant portion of the Petition for Review did not fairly present the federal due 16 process claim now alleged in Ground A, as it neither cited to the United States Constitution, 17 nor explicitly discussed any principles of federal constitutional law, nor cited any federal or 18 state cases analyzing relevant federal constitutional issues. The Petition's reference to *State* 19 *v. Holden*, 88 Ariz. 43, 54, 352 P.2d 705, 713 (1960), was for multiple reasons insufficient 20 to overcome these omissions. First, the Petition did not even directly cite *Holden*, but rather 21 *Arizona v. Livingston*, 206 Ariz. 145, 148, 75 P.3d 1103, 1106 (2003), a case relying on 22 Arizona state law and presently irrelevant rules of search and seizure under the Fourth 23 Amendment of the United States Constitution to hold that incriminating evidence of illegal 24 drug activity had been properly suppressed at a criminal trial. The excerpt from *Livingston* 25 that was cited in the Petition for Review only explicitly discussed Arizona rules of evidence 26 and only contained a parenthetical quotation of one sentence from *Holden* that generically 27 recites a party's "right" to produce evidence challenging the credibility of an opposing 28 witness. Assuming for a moment that *Holden* squarely addresses the precise federal due

1 process issue raised in Ground A of the Second Amended Petition, a single and indirect reference to that case, tucked away in a petition otherwise bereft of any indicia a federal constitutional issue, cannot be deemed a fair presentation of Petitioner's federal due process claim to the Arizona Court of Appeals.

Second, even if the format of Petitioner's presentation of the claim were sufficient for the purposes of exhaustion, *Holden* does not actually rely on any principles of federal constitutional law. The defendant in that case argued that the trial court erred by sustaining an objection to his counsel's cross-examination of an adverse witness on issues pertaining to the witness's credibility. Explaining that the "rule is well settled in *this jurisdiction* that a cross-examiner should be given great latitude in his questions which seek to impeach an adverse witness," 88 Ariz. at 54, 352 P.2d at 713 (emphasis added), the Supreme Court of Arizona held that "the errors committed during the course of [the] trial were so prejudicial to the defendant that he was not accorded that fair and impartial trial guaranteed to him by the Constitution and laws of *this State*," 88 Ariz. at 57, 352 P.2d at 715 (emphasis added). The opinion is populated with numerous references to state court precedent and does not contain any substantial discussion of federal law.

*Holden*'s mere citation to *Alford v. United States*, 282 U.S. 687 (1931), and *Gordon v. United States*, 344 U.S. 414 (1953), does not disturb the conclusion that Petitioner failed to fairly present a federal due process claim to the Arizona courts. *Alford* and *Gordon* are grounded in customary rules of evidence more than relevant principles of federal constitutional law. In *Alford*, the U.S. Supreme Court found that a federal district court had committed prejudicial error by precluding cross-examination on an issue pertaining to the credibility of an adverse witness. 282 U.S. at 694. The Court explained in reaching this decision that "[c]ross-examination is a matter of right," *id.* at 691, but did not explicitly base its conclusion on any provision of the U.S. Constitution, and it repeatedly referenced state authority for support, *see id.* at 692-93. In *Gordon*, the Court similarly addressed whether statements undermining the credibility of an adverse witness had been improperly excluded from the petitioners' criminal trial. Noting that, "[i]n the absence of legislation, questions

- 10 -

of this nature are governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience," 344 U.S. at 416, it was held that error had been committed, *id.* at 423. Nowhere did *Gordon* invoke the federal constitution as a basis for decision. *See also* 344 U.S. at 420 ("The question to be answered on an application for an order to produce is one of admissibility under *traditional canons of evidence*, and not whether exclusion might be overlooked as harmless error.") (emphasis added). Perhaps equally important, even if *Alford* and *Gordon* did rely on pertinent constitutional principles, the portion of *Holden* referenced in the Petition for Review–page 54 of the Arizona Reporter and page 713 of the Pacific Reporter–does not actually cite or discuss *Alford* or *Gordon* as Petitioner alleges, but rather the Arizona Supreme Court case of *Fuller v. State*, 23 Ariz. 489, 205 P. 324 (1922), another authority that focuses on state rules of evidence. *See Holden*, 88 Ariz. at 54, 352 P.2d at 713. The Arizona Court of Appeals would have only found the references to U.S. Supreme Court precedent by reading beyond the citation contained in *Livingston*. *See* 88 Ariz. at 55, 352 P.2d at 714. Because exhaustion under habeas requires a far more focused presentation of federal constitutional claims, the court adopts the R&R's finding that Petitioner failed to fairly present Ground A of the Second Amended Petition as a federal constitutional issue before the Arizona Court of Appeals. Given that state procedural rules bar Petitioner from returning to state court, *see* R&R at 35-36, Ground A is procedurally defaulted.

**C.  Objection 3**

Petitioner's third objection to the R&R is that even if Ground A has been procedurally defaulted for failure to exhaust, it may be reviewed on the merits in accordance with *Schlup v. Delo*, 513 U.S. 298 (1995). "A petitioner can overcome procedural default and obtain federal review of the merits of his claims either [1] by demonstrating evidence of actual innocence sufficient to bring [him] within the narrow class of cases . . . implicating a fundamental miscarriage of justice, or [2] by making an adequate showing of cause and prejudice." *Smith v. Baldwin*, 466 F.3d 805, 812 (9th Cir. 2006) (internal citations and quotation marks omitted). The first of these routes to federal review, known as the "*Schlup*

1 gateway," requires a showing that a constitutional violation has "probably resulted in the
2 conviction of one who is actually innocent." *Schlup*, 513 U.S. at 327. Sufficient probability
3 of innocence exists if the petitioner shows that "in light of all the evidence, including
4 evidence not introduced at trial, 'it is more likely than not that no reasonable juror would
5 have found [him] guilty beyond a reasonable doubt.'" *Majoy v. Roe*, 296 F.3d 770, 776 (9th
6 Cir. 2002) (quoting *Schlup*, 513 U.S. at 327). In other words, the petitioner "must show that
7 a court cannot have confidence in the outcome of the trial." *Id.* at 776. In evaluating whether
8 this standard has been satisfied, the district court's function is "not to make an independent
9 factual determination about what likely occurred," but rather to make a "probabilistic
10 determination" about how reasonable, properly instructed jurors would react "to the overall,
11 newly supplemented record." *House v. Bell*, 126 S. Ct. 2064, 2077-78 (2006).

12 Having examined the record, the court adopts the R&R's finding that waiver of
13 Petitioner's procedural default is unwarranted. The evidence offered in support of Ground
14 A of the Second Amended Petition establishes that Detective Whitson lied while testifying
15 in other criminal cases, not that the detective lied in this case. Even assuming that reasonable
16 jurors would wholly discount the detective's testimony based on inferences drawn from her
17 prior misconduct, Agent Michael Staltz testified that Petitioner admitted to intentionally
18 inserting his finger into the victim's vagina, and Dr. Sylvia Strickland testified that the injury
19 to the victim's hymen was consistent with molestation. Jacqueline Swigart–a social worker
20 who interviewed the victim–and the victim's mother also both testified of facts that
21 reasonable jurors would find corroborative of the statements from Staltz and Strickland.
22 Petitioner has thus failed to show that, in light of all the evidence, it is more likely than not
23 than no reasonable juror would have found him guilty beyond a reasonable doubt. *Schlup*,
24 513 U.S. at 327.

25 **D.    Objection 4**

26 Petitioner next objects to the R&R by arguing that Ground A should be reviewed on
27 the merits even if that claim is procedurally defaulted. The precise basis for the objection
28 is somewhat unclear. On one hand, the objection cites only general language on the

constitutional significance of habeas corpus, apparently on the view that the writ's significance independently warrants federal review on the merits of Ground A despite Petitioner's procedural default. On the other hand, Petitioner also briefly states that he is entitled to a review on the merits because of the misconduct of Detective Whitson–an argument that could be generously construed as a request for waiver of the procedural default on the basis of cause and prejudice. The court will address this ambiguity by assuming that Petitioner objects to the R&R on both grounds.

To the extent that Petitioner argues that the constitutional significance of habeas relief independently warrants review on the merits of Ground A despite procedural default, the objection is unpersuasive. The intended effect of the *Schlup* gateway is that a defaulted habeas claim may be reviewed on the merits only in "extraordinary" cases. *See Schlup*, 513 U.S. at 327; *Majoy*, 296 F.3d at 775-76 ("In order to pass through *Schlup's* gateway, and have an otherwise barred constitutional claim heard on the merits, a petitioner must show that, in light of all the evidence, including evidence not introduced at trial, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.") (internal quotation marks omitted). In restricting review of defaulted claims, the *Schlup* standard intentionally accommodates both the "overriding individual interest in doing justice" and "systemic interests in finality, comity, and conservation of judicial resources," *Schlup*, 513 U.S. at 327, and thereby takes into consideration the constitutional importance of the writ. Reviewing the merits of Ground A despite Petitioner's procedural default and failure to satisfy *Schlup* would unhinge the gate and overwhelm the accommodation of interests that it reflects.

The objection is also unpersuasive insofar as it rests on allegations of cause and prejudice. The "existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Examples of factors that satisfy this standard include the unavailability of the factual or legal basis of a claim and "interference by officials." *Id.* The existence of prejudice in

1  turn hinges on whether there is a "reasonable probability that, but for . . . errors, the result
2  of the proceedings would have been different." *Robinson v. Ignacio*, 360 F.3d 1044, 1054
3  (9th Cir. 2004).

4  Under the cause and prejudice test, Petitioner's objection fails because the basis for
5  his procedural default, as explained above, is his failure to fairly present his federal due
6  process claim to the Arizona Court of Appeals, and he fails to show or even explain how
7  some "objective factor external to [his] defense" produced that default. *Murray*, 477 U.S.
8  at 488. Indeed, neither Detective Whitson's perjury nor the presence of "non-communicative
9  courts," Doc. # 76 at 11, has any logical bearing on Petitioner's ability to present a federal
10 due process claim, as opposed to a claim grounded in equity and state rules of evidence, *see*
11 Exhibit BB at 2-3, 5-7. Given that Petitioner was aware of the factual predicate for Ground
12 A when he filed his Petition for Review with the Arizona Court of Appeals, he could have
13 easily framed the claim in terms of federal constitutional law, had he chosen to do so.
14 Moreover, even assuming that Petitioner failed to present a federal constitutional issue
15 because his counsel provided "lackadaisical" assistance, Doc. # 76 at 11, that factor is part
16 of–rather than "external" to–Petitioner's defense, and is therefore not "cause" for waiver of
17 the default. *See Carrier*, 477 U.S. at 488.

18 For the reasons articulated above, Ground A of the Second Amended Petition will be
19 dismissed with prejudice. With respect to Grounds B and C, the court accepts the R&R
20 within the meaning of Federal Rule of Civil Procedure 72(b). *See* 28 U.S.C. § 636(b)(1)
21 (stating that the district court "may accept, reject, or modify, in whole or in part, the findings
22 or recommendations made by the magistrate").

23 Insofar as the Magistrate Judge also ruled on any non-dispositive matters, either
24 within the R&R or elsewhere, error may not be assigned to any defect in those rulings to the
25 extent that Petitioner did not file a timely objection. Fed. R. Civ. P. 72(a) ("Within 10 days
26 after being served with a copy of the magistrate judge's order, a party may serve and file
27 objections to the order; a party may not thereafter assign as error a defect in the magistrate
28 judge's order to which objection was not timely made."). The absence of a timely objection

precludes appellate review of the non-dispositive rulings of a magistrate judge. *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174 (9th Cir. 1996); *Philipps v. GMC*, 289 F.3d 1117, 1120-21 (9th Cir. 2002).

IT IS THEREFORE ORDERED that the Report and Recommendation of Magistrate Judge Irwin (Doc. # 73) is ACCEPTED, with the exception that the recommendation that Ground A of the Second Amended Petition (Doc. # 56) be found untimely for failure to relate back is REJECTED.

IT IS FURTHER ORDERED that Ground A (due process) of the Second Amended Petition is dismissed with prejudice.

IT IS FURTHER ORDERED that Ground B (ineffective assistance of counsel for failing to inquire about the age of the victim's injury) of the Second Amended Petition is dismissed with prejudice insofar as it alleges ineffective assistance of appellate counsel.

IT IS FURTHER ORDERED that Ground B is denied insofar as it alleges ineffective assistance of trial counsel.

IT IS FURTHER ORDERED that Ground C (ineffective assistance of counsel for failure to meet with petitioner and call appropriate witnesses) of the Second Amended Petition is denied.

IT IS FURTHER ORDERED that the Clerk of Court enter judgment accordingly. The Clerk shall terminate this action.

DATED this 13th day of March 2007.

_____
Neil V. Wake
United States District Judge